All right, Mr. Wickmer, we'll hear from you first. Thank you, Your Honor. May it please the Court, my name is Timothy Wickmer and I represent the petitioners in this case, Maria Alvarenga and her son who is designated as EDBA in this case. We would ask that the Court vacate and set aside the decision of the Board of Immigration Appeals finding petitioners removable and denying their applications for relief in the form of asylum, withholding and cancellation of the Convention Against Torture, withholding under the Convention Against Torture. We would ask that the Court remand the case for a proper hearing and process to determine removability, to determine the pleadings in the case and ensure that due process of law is followed and that the statute and regulations are also adhered to. The first thing in this case is not that the judge put the cart before the horse, but that there is no horse. The judge likes the cart, doesn't care if there's a horse. You, quote, you are before this court because you have violated the immigration laws of the United States. That isn't the conclusion of the case, that's the very first thing that my clients heard after the judge introduced himself. That's on page 79 of the administrative record. The whole point of a removal hearing is to determine if someone is removable and has violated the immigration laws of the United States. That is how the case began and the immigration judge's conduct of it in this case was so poor and full of errors that it violated the Due Process Clause under Eighth Circuit standard beginning with Elkhoury and Tunn v. Gonzalez. It rendered the proceedings fundamentally unfair, caused the petitioner's harm, produced an outcome that may very well have affected the case and certainly had the potential to affect the outcome, which is the Tunn standard in this case. The IJ failed to ascertain whether the petitioners had even received the charging document called the Notice to Appear. The IJ did not follow the applicable statute enacted by Congress and the regs to explain the charges, explain what the charges were in language that the petitioners understood and to take pleadings. Instead the immigration judge conducted a very inexact and incomplete form of colloquy with the lead petitioner who said that she, in response to her question, said that she was from Honduras and that when she came to the board she did not have a visa or a passport. But the charge under the NTA itself is under INA section 212A6AI, 1229A I think under the U.S. Code. And it says, you are an alien present without being admitted or paroled. And therein lies the entire problem. Before there can be any hearing on relief from removal, removability has to be established. If a person has a visa and is admitted, then they're not removable. If a person is paroled, then they are an alien present who has been admitted or paroled. So the immigration judge simply, you know, just to quote my cousin Vinnie to take an old reference, just wanted to skip the arraignment and go right to the trial and then skip the trial and go right to the finding. It's as though everybody knows that these immigrants are removable, so why do we need to have this particular process? So doesn't the petitioner have to show prejudice and if so, in what way was prejudice shown here? Yes, Your Honor. They do have to show prejudice to have a due process violation. And there's clear prejudice here because there is no removal without an order of removability, a finding of removability and an order of removal. So if the process is fundamentally flawed and violates due process and produces that order, then obviously it has the potential of affecting the outcome. There's no evidence in this case that the government produced or that was asked by the judge to the respondents, respondent being the term for the alien in the case, where they asked whether they had been paroled into the United States or did you have any permission to enter the United States. He simply asked about a visa. Did she show any plausible basis for being present legally? To be certain, she doesn't have to. The burden of proving removability is on the government. And when Al Curry also stands for the proposition that where the person is pro se as in this case, that the IJ has a duty to fully develop the record. But ordinarily, you know, when we see these cases and we get to the prejudice prong, there is at least some assertion that there was some problem with removability. And you know, that's a fact question. It's open and you say, okay, there is prejudice. But are you saying that Ms. Alvarenga never has an obligation to come forward with the evidence of prejudice? And if so, how is the prejudice prong supposed to be established? She has the obligation to show prejudice and I believe the prejudice here is very clear. It's clear prejudice because based upon the evidence adduced by the judge before making a finding, there was insufficient evidence to find removability. It's really that simple. The judge violated the statute of rigs in lots of ways. He didn't fully explain the charges. He didn't ask her to plead on the record. On page, on the immigration, I think, I'll forget the citation but I'll do it in rebuttal, but the IJ made notes on her NTA that weren't reflected in the record and not on the NTA of her son. There was no admission and concession. There was no pleading. There was no explanation. So in the end, the claim is that the process was so fundamentally flawed that the prejudice is innate in the process itself. Yes, your honor. By failing to follow any process, it's like the Queen of Hearts in Alice in Wonderland. Execution first, trial later. Right. The Supreme Court in the Pereira decision, I think, also relating to NTAs, but it's instructive I think because, I'm paraphrasing, but if the government is going to require immigrants to do the square corner, they should have to do it as well. A nation of laws and congressional act and regulation says that you have a duty to do these things. The judge did not do them. In light of the judge's statement going into the trial that they had violated the law, there's serious reason to wonder whether this was a fairly conducted hearing throughout. Certainly we would argue for remand also because of the record on asylum. She has a nascent claim there. I think the judge even admitted that. He said that he believed her and her reasonable and credible fear of what he called criminal activity. Well, the point of whether gangs can be political opinion, imputed political opinion, there is a circuit precedent on this, but all those decisions came down before the presidential executive order on January 20 of 2025 and the State Department designation of MS-13 as a terrorist organization, which explicitly state that they operate in a quasi-governmental way and that they have the effect of running governments, infiltrating governments, and that they're a serious multinational threat. Now, of course, this pro se defendant was only being asked questions by the judge, stated that there were threats. There was enough there that this really would benefit the interest of justice, demand that this be looked at. We only have the ... I only have 10 minutes for argument. I could go on my ... I'm sure that I'll go on too long anyway, but our brief is very clear in just how he conducted the case. It wasn't good enough. That's not what this country represents. It's not enough that any executive wants to affect the removal of enough people. They still have to follow the law to do so. We have a constitution. We just ask the court to make sure that the government follows it and that justice is done. If there are questions, otherwise I'll reserve my rebuttal. Thank you for your argument. Ms. Marshall, we'll hear from you. May it please the court. Let me ... I'm not quite as tall. You may adjust the podium. There's a button on the side there. Thank you. May it please the court. I'm Lindsay Marshall on behalf of the Attorney General. There are two issues before the court today. First, whether the agency correctly determined that there was no procedural irregularity that amounted to a due process violation relating either to the service of petitioners and TAs or to the taking of their pleadings. And second, whether petitioners waived argument to the agency's denial of relief and protection from removal. I'll start with the due process claims and I'll jump in at where petitioners started, at the taking of their pleadings. As he mentioned, their burden is to show error, some kind of fundamental process error, and prejudice. It's difficult to show prejudice here. Here, the charge was whether they were admitted or paroled, but there's just nothing in the record that indicates that they ever were. Tellingly, on their form, on their application form, when asked for their I-94 number, they said, none. An I-94 is the document you get when it's an entry, or excuse me, a record of admission or entry or departure. It's the form you get when you are admitted or paroled into this country. And they don't have it. On page 164 of the record, in a written pleading given to the immigration judge before there was ever any hearing, Ms. Alvarenga said that they encountered immigration officials within 14 days of entry. That they encountered them when they were already here. What about this argument that somehow, I think the argument is that there's a structural error in the way that this trial or this hearing was conducted, and that it is so devoid of the ordinary forms of due process that it just fails. And so the prejudice is the hearing itself is so fundamentally flawed that it can't stand. And so I think what they're really saying is that by the way that the IJ opened the hearing when he said that because you violated the immigration laws, that he'd already determined that they were in violation. That they had jumped past the first opening stages of the process. That the allegations were never formally explained. And that this person without a lawyer was never told how they needed to proceed. And instead, we move to the end very quickly over a period of hearings, by the way. A period of hearings, yes. Over a series of hearings, right? Over a period of time. But their claim is that whatever that is, it's so flawed. Why is that wrong? I don't see an error that egregious in the way that the immigration judge asked them questions about the NTA or about the service of their NTA itself. When he was asking about the pleadings, I think what the immigration judge was trying to gauge was in a plain language way, did you engage in this process of admission? Because admission is a formal process. Typically, you show up to a port of entry. You give your passport, your visa to an immigration officer. They inspect it, and you, and then they admit you. So he asked them, did you engage in that first part of the process? Did you have a passport or a visa? And they said no. I don't think he was trying to railroad them. I think he was just trying to gauge their participation in this process. And I don't see that kind of error in the service of their NTA either. Petitioners allege that the agency just didn't ascertain if they ever got it. But I think it's notable, again on page 164 of the record, that Ms. Alvarenga acknowledged the NTA before any of her hearings had ever occurred. And the NTA itself, just looking at the face of it, there's no indication that it wasn't properly served. The personal service box is checked. There's a stamp on it saying that they refused to sign it when they were given to it, which is common. And then there was a witness to that too. A border patrol agent signed it. Just looking at that too, it's hard to see where the error here was in the service. Without a prejudicial error, petitioners just can't show a due process violation here. At least not one that may have impacted the outcome of their proceedings. In the end, the record shows their NTA was served, and there's no indication that they were ever admitted or paroled. If there's no questions on that, I'll turn to the second slide. The second issue, which is whether petitioners waived argument to the denial of their applications for relief and protection. Petitioners were required to lay out their contentions and the reasons for them with citations to fact and law. This requires more than a reference to the issues. It requires a meaningful argument to support their assertions. And the government doesn't see that that's the case here. I think Nexus is a good example of this. The agency held that the gang's only motive was the desire to further their own criminal enterprise. And they got this from Ms. Alvarenga's testimony. She said that they targeted EDBA because he was in the right age bracket. And they wanted people in that age bracket, boys in that age bracket, to join to sell drugs and commit crimes and kill people. But petitioner's brief doesn't cleanly address or try to rebut this. First, they present a theory about a tug of war between the gangs and the Honduran government, but there's no citations to the record there. And they suggest Ms. Alvarenga had an anti-narco state political opinion, also with no citations to the record. Then they have a kind of boilerplate about an imputed political opinion. And then a suggestion that any case law dictating the agency's decision, 8th Circuit case law, should be overturned. And then a passage asserting that persecutors can have more than one motive. But nowhere in here do they actually grapple with why the agency found that was the gang's motive or make an attempt to rebut it. It's sort of like the technical challenge in the Great British Baking Show, where you get the ingredients and the name of the recipe, but not how to bake it. We have some ideas here, but we don't have an actual argument rebutting the agency's findings. And this is true also in the PSG and the CAT arguments, where we have some indications of ideas, but nothing that cleanly rebuts what the agency actually held and why. And without those arguments, it's difficult for them to meet their burden, which is to show that any reasonable fact finder would find that the record compelled the conclusion that the agency was wrong. If there are no further questions, I'll conclude here. Very well. Thank you for your argument. Thank you. Thank you. We'll hear rebuttal. Thank you, Your Honor. Hold on. Is that the correct time? Yes, sir. All right. Very well. You may proceed. Thank you. With regard to assuming the personal service, it's alleged that she didn't sign. The witness that said she didn't sign was not produced in court, nor did the judge ask any questions about that, nor was she allowed to cross-examine the witness who said she didn't sign. We don't even know that she got it. It's assumed. Everything here is assumed. When it comes to the NTA, the judge noted that it was defective in terms of time and place under Pereira, under Nes Chavez, and he didn't correct it on the claims processing basis, which doesn't require prejudice under a matter of Fernandez. The government cites Amador Morales because you have to raise these objections before pleadings are closed. Well, obviously, in this case, the pleadings haven't been closed. They never really were taken. And this court in that decision said that they would foreclose that after a distinct and formal admission. And that case where Amador Morales was represented, there was an admission and concession of the charge on the record that doesn't exist here. With regard to our argument on appeal, with regard to the various claims of asylum, I have to cut something short, so I'm just briefly. I think the petitioner's argument on appeal made a very good argument out of a very stunted record. A stunted record that is further evidence of the procedural problems with this case that amount to a due process violation. Nothing on the application for asylum can be used to establish removability. So when they say no I-94 record on the asylum app or admitting alienage on the asylum app, that is not allowed to be used. That's regulation 8 CFR 1240.49E. There's a typo in the brief that says G, it should be E. So they can't use that. That's something that came into being after the faulty finding of removability. And again, the conduct of the case, they did not ask, he did not sufficiently develop a record to produce a sustainable finding of removability. So the hearing on the merits of relief is premature and we would ask that it be vacated and remanded. Very well. Thank you. Thank you for your argument. Thank you to both counsels.